**James Willie GOODWIN, Plaintiff,**

v.

**BE–MAC TRANSPORTATION, et al., Defendants.**

No. 80–387C (4).

United States District Court,
E.D. Missouri, E.D.

June 30, 1983.

---

Donald L. McCullin, Wilson, Smith & Smith, St. Louis, Mo., for plaintiff.

Henry D. Menghini, Evans & Dixon, St. Louis, Mo., Cary Hammond, Diekemper, Hammond & Shinners, St. Louis, Mo., for defendants.

## MEMORANDUM OPINION

CAHILL, District Judge.

James Willie Goodwin filed this action under § 1 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, alleging racial discrimination in two counts. Count I of the complaint states that defendant Be-Mac Transportation discharged Goodwin from his job as an over-the-road truck driver because Goodwin is black. Be-Mac responded that it discharged Goodwin for a legitimate, non-discriminatory reason. Be-Mac proffers that Goodwin's employment was terminated because of his careless driving that resulted in an accident and caused extensive damage to one of Be-Mac's vehicles. Count II of the complaint is a cause of action under § 1981 against defendant Highway, City, and Air Freight Drivers, Dockmen and Helpers Local Union No. 600 (Local 600). Under Count II Goodwin alleges that in connection with the grievance he filed in response to his discharge by Be-Mac, the "defendant union accorded plaintiff a lower level of representation than similarly situated white employees." Goodwin further states under Count II that "defendant did not enforce plaintiff's claims as vigorously as defendant enforced the claims of similarly situated white employees." As relief Goodwin seeks reinstatement to his position as an over-the-road truck driver, back pay, damages, attorney's fees and costs.

The case was tried to the Court and the parties presented testimony and documentary evidence. Based on the record before the Bench, the evidence adduced at trial, and the post-trial memoranda filed by all of the parties in this action, the Court makes the following findings of fact and conclusions of law.

## Findings of Fact

1. James Willie Goodwin is a black male who resides in St. Louis, Missouri. Goodwin was an over-the-road truck driver employed by defendant Be-Mac from July 11, 1968, until November 17, 1978.

2. Defendant Be-Mac Transportation is a corporation duly authorized to do business in the state of Missouri and engaged in the business of interstate commerce as a common carrier.

3. Defendant Union, Local 600, is a labor union affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America, representing employees within the state of Missouri, and is a party to collective bargaining agreements with defendant Be-Mac.

4. At approximately 1:45 a.m. on the morning of November 11, 1978, Goodwin, while operating a tractor and trailer owned by Be-Mac, left the traveled portion of Interstate Highway 55 in Illinois and substantially damaged Be-Mac's tractor and trailer. No other vehicle on Interstate 55 contributed to Goodwin's accident. Goodwin stated after the accident that the tractor and trailer skidded off of Interstate 55 because of oil on the highway. Goodwin asserted that the oil caused the rig to go into a slightly jackknifed position and in order to avoid further "jacking" of the rig, Goodwin had to slightly apply his brakes which caused the rig to leave the traveled portion of Highway 55.

5. Vern Owens, an Illinois State Highway patrolman who investigated Goodwin's accident, stated that Highway 55 was wet because of a previous rain but did not indicate that any oil was present on the road. Patrolman Owens also testified by deposition that there had been no prior accident on that portion of Highway 55 earlier that night which could have resulted in an oil slick.

6. Rich Maurer, Be-Mac's line haul safety supervisor, investigated the accident about three hours after it occurred. Maurer found no evidence of fuel on the portion of Highway 55 where the accident occurred. In his investigation Maurer also rejected Goodwin's statement that the rig had gone into a jackknifed position or that Goodwin had applied the rig's brakes just before the ensuing damage. Photographs of the tire marks left by the rig on the shoulder of Highway 55 indicate that the rig gradually eased off the road. The photographs show that the tire marks are clear on the shoulder of Interstate 55 for approximately 200 feet and continue into an adjacent field for about another 200 feet where the rig came to rest on its side. The tread marks on the shoulder of Highway 55 from the tires indicate that the rig was not in a skid when it left the road. Moreover, the condition of the shoulder of Interstate 55 shortly after the accident indicates that the rig was not in a jackknifed position at the time it left the highway.

7. Maurer's investigation further disclosed that the accident caused substantial damage to Be-Mac's tractor and trailer. The rig was carrying a full load of freight when it overturned, which also was substantially damaged as a result of the incident. Be-Mac maintained that the damage to the freight totalled approximately $30,-000.

8. Mr. C.J. Giblin, the current president of Be-Mac, was vice-president of operations of Be-Mac at the relevant times herein.

9. While vice-president of Be-Mac, Giblin established a policy of terminating over-the-road truck drivers for serious accidents due to the driver's own negligence or carelessness. For the purposes of that policy, any accident resulting in excess of $1,000 in damages was deemed to be serious. Also under that policy Giblin discharged drivers shortly after a serious accident. The evidence indicates that it was not unusual for Giblin to discharge a truck driver on the same day of an accident.

10. Maurer reported his findings as well as those of Patrolman Owens to Giblin. Giblin then reviewed Goodwin's prior driving record and found that Goodwin had had four previous single-vehicle accidents. Giblin also noted two warning letters that

Goodwin had received regarding discrepancies in Goodwin's log. Giblin also considered an unsolicited report that indicated that Goodwin was not getting proper rest between driving shifts. Based on the foregoing, Giblin concluded that the November 11 accident was caused by Goodwin's carelessness.

11. Giblin terminated Goodwin's employment on November 17, 1978. In response to the discharge Goodwin filed a grievance with his union, Local 600. Local 600 and Be-Mac did not resolve the grievance informally and on December 20, 1978, the discharge was appealed to the Missouri-Kansas Joint Area Committee which denied the appeal.

12. Occasionally, however, Giblin would reinstate employees discharged because of serious accidents and levied lesser penalties prior to a formal grievance hearing by the Missouri-Kansas Joint Area Committee. In making such a decision Giblin considered various factors, such as the nature of the accident and the amount of damage sustained.

13. The evidence strongly indicates in the present action that Giblin did not pursue an informal resolution of Goodwin's termination grievance because of the extensive damage to the rig and the strong implication that Goodwin's negligence caused the accident. In other cases where Giblin did engage in an informal resolution, Giblin had made a predetermination that he could not successfully controvert the cause of the accident as recounted by the Be-Mac driver or, even when driver negligence was evident, there was a substantial question as to whether the amount of damage exceeded $1,000.

14. The record before the Bench indicates that none of the mitigating factors discussed above existed in Goodwin's case. Based on the statements made by officer Owens and Maurer, it was reasonable for Giblin to determine that the cause of the accident as stated by Goodwin was not persuasive. Also, it was very apparent that the damage to the rig and the freight within it easily exceeded $1,000. The reasons given by Goodwin for leaving the road in his rig are not supported by the evidence in this case.

15. The Court is mindful that white employees of Be-Mac were discharged for accidents but reinstated to their jobs through informal negotiations between Giblin and Local 600. But, the Court is also mindful that other employees, both white and black, were forced to go through the formal grievance proceeding before reinstatement. The evidence supports Giblin's testimony that drivers were not treated differently because of race but were treated differently based on factors other than race.

16. While Giblin was vice-president of operations for Be-Mac, Be-Mac terminated the employment of 17 over-the-road truck drivers. Fourteen of the discharged truck drivers were white and three were black. The Court further recognizes that of the three black drivers discharged, two were finally reinstated.

17. The Court finds that Goodwin's discharge by Be-Mac was not racially motivated. It bears mentioning that Goodwin's replacement at Be-Mac is Sterling Washington who also is black. At last report Washington is still an over-the-road truck driver for Be-Mac.

18. At the relevant times herein Be-Mac was a party to a collective bargaining agreement with Local 600. The terms and conditions of that agreement governed Goodwin's employment.

19. In response to Be-Mac's discharge of Goodwin, Alan Weber, the Local 600 steward at that time, contacted Goodwin and advised him to file a grievance with the union office. Goodwin went to the office and discussed his case with Gene Lemke, the business agent for Local 600 at Be-Mac. After Goodwin presented his side of the story concerning the November 11 accident, the union filed a grievance protesting Goodwin's discharge. Lemke contacted Giblin and advised Giblin of Goodwin's version of the accident but, as stated before, Giblin declined to voluntarily reinstate Goodwin.

20. The union then presented Goodwin's grievance before the Missouri-Kansas committee but the committee denied Goodwin any relief. The Missouri-Kansas committee is composed of an equal number of persons selected by various employers and unions that are parties to the national bargaining agreement. None of the individuals who composed the committee which heard and decided Goodwin's discharge grievance were officers, employees, or agents of either Be-Mac or Local 600. Neither Be-Mac nor Local 600 controlled the votes cast by the members of the committee.

21. Goodwin's discharge grievance was heard by the Missouri-Kansas committee on December 20, 1978. At that hearing Goodwin was represented by Lemke. Goodwin was present and was allowed to testify in his own behalf. As stated earlier, after the hearing the committee denied Goodwin's claim. Under Article 45, § 1(a) of the collective bargaining agreement, the decision of the committee was final and binding upon all of the parties.

22. During Lemke's term as business agent for Local 600, he processed discharge grievances for other black over-the-road drivers of Be-Mac. James Heath, a black Be-Mac driver, was discharged twice for a road accident. Robert Payne, another black Be-Mac driver, was also discharged for an accident. As in the case of Goodwin, Lemke represented those drivers and Heath was reinstated by the Missouri-Kansas committee twice. Payne was reinstated by the committee once. Lemke also negotiated the reinstatement of Sterling Washington, Goodwin's replacement, who was discharged for failing to report a road accident.

23. While Lemke served as steward for Local 600 at Be-Mac, Goodwin was the only case in which a black driver was not reinstated. The Court is not persuaded that Lemke or Local 600 were racially antagonistic toward Goodwin. Neither is the Court persuaded that Lemke or Local 600 processed the grievances of white Be-Mac employees differently than those of the black employees. The Court is especially unconvinced that the discharge grievance of Goodwin was processed differently than similar discharge grievances of white Be-Mac employees.

### Conclusions of Law

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1343(3) and (4), and 42 U.S.C. § 1981.

■ 2. To establish a prima facie case of racial discrimination based on disparate treatment under 42 U.S.C. § 1981 Goodwin must show that (1) he is a member of a minority group, (2) he was qualified for the position which he was seeking, (3) he was rejected for the position, and (4) that the employer continued to seek applicants for the position. *Pacheco v. Advertisers Lithographing, Inc.,* 657 F.2d 191 (8th Cir.1981). Of course, in the instant case the test must be modified somewhat. In the case at bar Goodwin must show that he was qualified for the position from which he was discharged, and that Be-Mac replaced him with a nonminority of similar qualifications.

■ 3. Also, a finding of liability for racial discrimination under 42 U.S.C. § 1981 requires a finding of discriminatory intent. *General Building Contractors Association, Inc. v. Pennsylvania, et al.,* —— U.S. ——, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982); *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976).

■ 4. At first blush it appears that Goodwin has failed to even make a prima facie case in this instance since Be-Mac hired Sterling Washington, a black, to replace Goodwin as an over-the-road truck driver. However, it is unnecessary to render a determination on that issue. Assuming, without deciding, that Goodwin has established a prima facie case, Goodwin still cannot prevail on his cause of action because under the facts as enumerated in this memorandum opinion, the Court is not persuaded that the defendants harbored the necessary discriminatory intent to be liable under § 1981.

5. The Court holds that defendants Be-Mac and Local 600 should have judgment against plaintiff Goodwin. The Court fur-

ther holds that the parties shall bear their own costs of this litigation and attorneys' fees.

The Court compliments all counsel for an especially well tried case and particularly commends plaintiff's attorney for his diligence and zeal.